IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CASE NO_____

ELECTRONICALLY FILED

LINDA SCOTT : PLAINTIFF
:
v. :
:
SUMMIT MEDICAL GROUP, INC. D/B/A :
ST. ELIZABETH PHYSICIANS :
SERVE: :
ROBERT M HOFFER :
207 THOMAS MORE PARKWAY :
CRESTVIEW HILLS, KY 41017 :
: DEFENDANT

_____

### COMPLAINT WITH JURY DEMAND

Plaintiff brings this employment action, by and through undersigned counsel Matthew Cline, and allege as follows.

### PARTIES

1. Plaintiff Linda Scott at all times relevant was and is a resident of the Commonwealth of Kentucky.

2. Defendant Summit Medical Group Inc. d/b/a St. Elizabeth Physicians ("St. Elizabeth Physicians") was registered with the Kentucky Secretary of State and conducted business in Kentucky at all relevant times.

### JURISDICTION AND VENUE

3. This is a civil action brought by the Plaintiff Linda Scott to redress violations of Federal Law, including the Americans with Disabilities Act, 42 U.S.C. §§ 12111-12117, and the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq*, that resulted in wrongful termination.

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (Federal Question).

5. Venue is proper in this Court because the Defendant transacts business in this district, and its primary place of business and the location of the events relevant to this case is Boone County, Kentucky.

6. At the time of filing this Complaint, Plaintiff mailed a copy of the same to the Defendant by certified mail and requested waiver of service.

## FACTUAL BACKGROUND

7. Plaintiff incorporates by reference each and every allegation in the paragraphs above as if restated herein.

8. Upon information and belief, St. Elizabeth Physicians, employs more than 50 employees in a 75 mile radius, and did employ more than 50 employees in that area for at least 20 weeks during the 12 months preceding the termination date. The information and belief relied upon include observations by the Plaintiff and her estimates of total employees, and a statement on the St. Elizabeth Physicians website accessed May 9, 2016, claiming to employ over 1000 associates.

9. St. Elizabeth Physicians provides health care services and engages in interstate commerce.

10. The Plaintiff was employed by the Defendant as a nurse.

11. The Plaintiff worked full time during the 12 months preceding the wrongful termination, accumulating more than 1,250 hours of work during that time.

12. The Plaintiff worked at St. Elizabeth Physicians for about 9 years.

13. The Plaintiff suffered a sudden hearing loss approximately 2 years prior to termination.

14. The Plaintiff was diagnosed with hearing loss on April 8, 2013.

15. The first treatments attempted were ineffective and the Plaintiff applied for hearing aids through the Kentucky Office of Vocational Rehabilitation.

16. The Plaintiff requested numerous accommodations on various occasions, following the advice of her treating physicians and the advice of the Kentucky Office of Vocational Rehabilitation.

17. Vicki Fritz was a direct supervisor of the Plaintiff, and failed to make any attempt of accommodation which was requested.

18. The accommodations requested included: request that microphones provided by the Office of Vocational Rehabilitation be worn by the doctors to accommodate Linda Scott's tinnitus; request to be allowed to leave work on time, as scheduled, to go to audiologist appointments to adjust her hearing aids, which appointments were scheduled for after work; request to have another nurse notify her when the doors opened, which was an audible signal; request for patient bed numbers when audible alarms sounded so Linda Scott could locate the proper patient; request to reduce hours to attend hearing aid appointments.

19. On multiple occasions, other nurses were sent home early and Linda Scott was required to work late which caused her to miss scheduled appointments to adjust her hearing aids, which her supervisor was aware of.

20. On August 18, 2015, Plaintiff informed her immediate supervisor, of her need to take leave under the Federal Family and Medical Leave Act because her hearing aids were not effective alone to accommodate her work duties.

21. During that leave period, Linda Scott was diagnosed with Chronic Anxiety Disorder, which she attributes to the campaign of harassment directed toward her by her supervisor and coworkers.

22. On October 8, 2015, St. Elizabeth Physicians called and told the Plaintiff that even if she was released by the doctor to return to work, St. Elizabeth would not restore Linda Scott to her position as nurse, rather she could return as a much lower paid secretary and gave Linda Scott the option to accept the position until October 31.

23. On October 10, 2015, St. Elizabeth Physicians called Linda Scott and informed her that the position as secretary was no longer available.

24. The Plaintiff could have continued to perform the duties of her role as nurse with some accommodation from St. Elizabeth Physicians.

25. There had been no significant prior disciplinary or other significant issues in the workplace involving the Plaintiff.

26. The complete lack of accommodation for her disability and the anxiety brought on by the campaign of harassment directed at Linda Scott made it impossible for her to perform the duties of her job.

27. The Plaintiff was expected to return to work within 12 weeks, to be able to perform her previous job duties within 12 weeks with reasonable accommodation, and in fact did recover enough to perform her job duties within 12 weeks with accommodation.

28. The Plaintiff was expected to require continuing treatment for hearing aid adjustments, which would require the employer to adhere to the work schedule issued to the nurses or would require the employer keep another nurse for those extra hours and allow Linda Scott to attend her scheduled appointments.

29. The Plaintiff is completely unemployed and applying for disability due to the combination of her hearing loss and chronic anxiety disorder.

## THE CAMPAIGN OF HARRASSMENT OVER LINDA SCOTT'S DIABILITY

30. The campaign of harassment began at the time of Linda Scott's hearing loss.

31. There was another nurse who suffered from deafness who was compared to the Plaintiff frequently but she was born with the disability and did not have tinnitus.

32. St. Elizabeth Physicians began leaving Linda Scott out of decision making meetings and excluded her from group training, requiring her to schedule her training individually rather than with her coworkers.

33. One specific instance of harassment was when Linda Scott requested the accommodation of having another nurse tap her on the shoulder when the door opened - an audible cue that the nurse should stop doing paperwork and attend to the patient.

34. In response, one of her co-workers, Brenda Paulie, started shouting and laughing hysterically.

35. Brenda Paulie pulled over a bed side table and exclaimed "If you can't hear, use your other senses. Stand here and watch the door to see when it opens!"

36. Brenda Paulie made a scene in front of the coworkers and the supervisor and was laughing about Linda Scott's disability and making fun of her request for accommodation.

37. The supervisor took no action against Brenda Paulie and did not provide the requested accommodation.

38. Brenda Paulie was the charge nurse that day and was supervising Linda Scott.

39. On September 18, 2013, Linda Scott's doctor recommended staffing and scheduling changes should be provided to Linda Scott to accommodate her disability until proper hearing amplification could be achieved.

40. St. Elizabeth Physicians refused to make any scheduling or staffing accommodation, stating it was Linda Scott's responsibility to find another nurse to work any shift Linda Scott would be scheduled for.

41. On October 11, 2013, St. Elizabeth Physicians wrote Linda Scott up for smoking in an area where employees are not allowed to smoke.

42. Other employees use that same area for smoking and are not written up when they are seen by management.

43. Vicki Fritz began calling Linda Scott into her office to discuss reports that Linda Scott was abandoning her patients and not being at their bedside, which were false allegations made by coworkers.

44. When Plaintiff's hearing aids were ready, Suzan Cyote refused to allow Linda Scott to pick up her hearing aids stating "If you leave you are abandoning your patients."

45. Other nurses were available to cover the time it would take Linda Scott to pick up her hearing aids.

46. Because St. Elizabeth Physicians would not work with Linda Scott's scheduled appointments, Linda Scott was forced to use her time off days to attend doctor appointments for her hearing aids.

47. After Linda Scott started using her paid time off for her doctor appointments, the supervisor decided to change the attendance policy to prevent Linda Scott from being able to attend her appointments.

48. From about August 7, 2015, to August 18, 2015, St. Elizabeth Physicians harassed Linda Scott because of her disability several times.

49. On August 7, Brenda Paulie heard Linda Scott make an appointment with her audiologist after work to adjust her hearing aids.

50. Linda Scott's cases finished at about 11 am, but she was told she would have to remain until everyone else was finished.

51. Brenda Paulie intentionally prevented Linda Scott from attending her appointment.

52. Linda Scott was told not to make any appointments on days she works because she never knows when she will get out of work, with Brenda stating "You know better!"

53. On August 13, 2015, St. Elizabeth verbally disciplined Linda Scott for attendance after the new policy went into effect.

54. On August 18, 2015, a few other nurses, including the charge nurse Brenda Paulie, and the nurses Laura and Carrie, complained to Vicki Fritz that Linda Scott had abandoned her patients and did not complete her reports.

55. Those nurses had moved Linda Scott's patients without telling her, took the reports, and were with the patients when Linda Scott left the room.

56. Vicki Fritz called Linda Scott into her office.

57. Linda Scott explained the complaints were false, began to cry, and told Vicki Fritz the other nurses were harassing her because of her disability again.

58. Vicki Fritz coldly replied "Maybe you should go on disability."

59. On August 18, 2015, after an extended period of not being able to have her hearing aids adjusted, Linda Scott saw her audiologist who recommended FMLA leave to adjust the hearing aids until Linda Scott could hear again.

60. Vicki Fritz required Linda Scott to work that day until 1pm after being presented with the doctor's note and request for FMLA leave.

### COUNT I: VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

61. Plaintiff incorporates all previous paragraphs as if restated herein.

62. This Count is brought by Plaintiff, Linda Scott, under the Family and Medical Leave Act provisions of 29 U.S.C. § 2601 *et seq* for Defendant's violations of same.

63. As described in this Complaint, Defendant, by and through its officers, agents, and employees knowingly terminated the Plaintiff's employment in response to her need to take time off for a disability.

64. According to the Plaintiff's doctor, the period of time was within the 12 week time period the Plaintiff was entitled to under the Family and Medical Leave Act.

65. Defendant required Plaintiff to work after Plaintiff requested leave due to her disability.

66. Defendant contacted the Plaintiff on October 8, before her period of leave had expired, and told her not to return to work.

67. Defendant has withheld wages wrongfully from the Plaintiff through this wrongful termination.

68. Defendant authorized and ratified all of the violations of the Family and Medical Leave Act committed by its various officers, agents, and employees, including those mentioned herein.

69. Defendant by and through its employees, agents, and officers wrongfully terminated the Plaintiff's employment.

70. WHEREFORE, Plaintiff demands judgment against the Defendant for a fair and reasonable amount as determined by a jury, for back pay to the date of termination, for no

reduction in back pay under a theory of collateral source doctrine or other theory to prevent a windfall to the wrongful employer caused by affirmative acts of the victim to mitigate damages and protect herself, front pay for a period of 3 years, no reduction in front pay pursuant to the collateral source doctrine or other theories, double damages by statute, court costs and reasonable attorney's fees at prevailing rates, expenses, exemplary damages and all other applicable remedies, and for such other and further relief as this Court deems meet, just, and proper.

## COUNT II: DISBILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT 42 U.S.C. § 12101 *et seq*

This Count can be sustained because administrative remedies have been exhausted pursuant to 42 U.S.C. § 12117, see Exhibit 1 Right to Sue Letter.

71. Plaintiff incorporates by reference each and every allegation in the paragraphs above as if restated herein.

72. The Plaintiff's deafness substantially limited the major life activities of the Plaintiff.

    a. There was a record of impairment, being the treating doctor's note, and a belief that Plaintiff was impaired, being the decision maker's knowledge of a hearing disability.

    b. The impairment limited major life activities including hearing as necessary to perform the major job functions of nurse.

73. The employer is and was a covered employer having 15 or more employees during the current or previous year, and which engages in an activity affecting commerce.

74. The Plaintiff presented several possible accommodations before being terminated, but the Defendant did not attempt any of the suggested accommodations.

75. The Defendant was aware of harassment and an offensive and hostile work environment but did not take corrective action.

76. The leave period was finite and, in retrospect, the leave period would have been sufficient to accommodate the Plaintiff's temporary disability on the information and belief the Plaintiff could have returned to work after her hearing aids were properly adjusted with full responsibilities at the end of the requested leave.

77. The temporary leave was taken after a prolonged period of Defendant denying the Plaintiff the opportunity to adjust the hearing aids to achieve adequate hearing.

78. The leave would not have amounted to an undue hardship under 29 C.F.R. § 1630.2(p)(2):

    a. Other employees could have worked more hours to temporarily cover the job responsibilities due to the nature, composition, structure, and function of the workforce.

    b. The employer is a large employer and the temporary loss of one employee would be insubstantial: there would be little cost associated with overtime hours of other employees and no net cost of increasing hours of part time employees.

    c. The financial resources of the entity, size of the entity, and nature of the operation would allow the employer to readily cover the temporary reduction in workforce.

    d. The temporary absence would not significantly impact the ability of other employees to do their work or the entity's ability to conduct business.

79. The decision maker of the employer refused to provide this accommodation by contacting the Plaintiff and informing her she would not be returning to her position as a nurse.

80. The decision maker held a managerial position with the Defendant.

81. The decision maker was acting within the scope of her employment on the information and belief that Defendant ratified the action of the decision maker.

82. The decision maker did not act in good faith, rather for the improper purpose of discriminating against a disabled person.

83. The decision maker perceived or should have perceived that discrimination due to an impairment of hearing might have been in violation of federal law.

84. The decision maker made no effort to inquire into the ADA requirements or to comply therewith, for example the decision maker did not engage in a process with the Plaintiff to determine what reasonable accommodations may be effective and attempt to implement those reasonable accommodations.

85. As a result of the discriminatory treatment, Plaintiff has been forced to withdraw a significant amount of money from her retirement accounts, apply for disability benefits, and is unable to find other employment.

86. WHEREFORE, Plaintiff demands judgment against the Defendant for a fair and reasonable amount as determined by a jury, for back pay to the date of termination, for no reduction in back pay under a theory of collateral source doctrine or other theory to prevent a windfall to the wrongful employer caused by affirmative acts of the victim to mitigate damages and protect herself, front pay for a reasonable period, no reduction in front pay pursuant to the collateral source doctrine or other theories, compensatory damages, punitive damages by the ADA standards, litigation costs and reasonable attorney's fees at prevailing rates, expenses, exemplary damages and all other applicable remedies, and for such other and further relief as this Court deems meet, just, and proper.

## COUNT III: DISBILITY DISCRIMINATION IN VIOLATION OF THE KENTUCKY CIVIL RIGHTS ACT K.R.S. 344.010 *et seq*.

87. The Plaintiff incorporates by reference each and every allegation in the paragraphs above as if restated herein.

88. This Count is brought as a separate count from Count II out of an abundance of caution: the elements, burden, and damages are so closely related in most cases to the ADA claim that courts treat ADA claims and KCRA claims as the same for most analysis, but there may be nuances that are shown to be relevant later in discovery or it may be determined the state statute applies where the federal statute does not.

89. WHEREFORE, Plaintiff demands judgment against the Defendant for a fair and reasonable amount as determined by a jury, for back pay to the date of termination, for no reduction in back pay under a theory of collateral source doctrine or other theory to prevent a windfall to the wrongful employer caused by affirmative acts of the victim to mitigate damages and protect herself, front pay for a reasonable period, no reduction in front pay pursuant to the collateral source doctrine or other theories, compensatory damages, punitive damages by the KCRA standards, litigation costs and reasonable attorney's fees at prevailing rates, expenses, exemplary damages and all other applicable remedies, and for such other and further relief as this Court deems meet, just, and proper.

## JURY DEMAND

90. Plaintiff requests a trial by jury on all claims.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Linda Scott prays:

(i)       That a judgment be entered against Defendant;

(ii)      A jury trial on all issues so triable;

(iii)     That judgment be entered against Defendant in favor of Plaintiff Linda Scott for an amount equal to all of her recoverable damages;

(iv)     That this Court award Plaintiff $596,400 or the maximum monetary recovery allowed under 29 U.S.C. § 2601 *et seq*;

(v)      That this Court award Plaintiff $178,920 or the maximum monetary recovery allowed under the ADA 42 U.S.C. § 12101 *et seq.* and related statutes and/or the KCRA K.R.S. 344.010 *et seq.*,

(vi)     If both iv and v above then to avoid double recovery by giving preference to recovery under the FMLA for back pay and front pay if both can be recovered under either statute to give full force and effect to the punitive damages under the FMLA;

(vii)    Awarding declaratory and injunctive relief as necessary to protect the public welfare;

(viii)   Awarding exemplary/punitive damages under each and both the Family and Medical Leave Act in the form of double damages and the Americans with Disabilities Act penalty amount of $300,000 by the EEOC guidelines based on company size to promote the different public interest objectives of each statute;

(ix)     Awarding emotional distress damages including for causing or aggravating the Plaintiff's chronic anxiety disorder;

(x)      Awarding reasonable attorney fees;

(xi)     Awarding costs associated with the disbursement/litigation of this action;

(xii)  Awarding interest; and

(xiii)  Such other relief as the Court deems just and proper.

                                          Respectfully Submitted,

                                          /s/ Matthew Cline_____
                                          Matthew Cline, #95318
                                          Attorney for Plaintiff
                                          526 Greenup Street
                                          Covington, KY  41011
                                          P: (859) 814-8454
                                          mattcline@mattclinelaw.com

## JURY DEMAND

The Plaintiff hereby demands a trial by jury on all issues of fact or otherwise so triable.

                                          /s/ Matthew Cline_____
                                          Matthew Cline

## CERTIFICATION

I do hereby certify that a true and correct copy of the foregoing Complaint was sent via certified U.S. Postal service with a request to waive service to the following recipients on this 6th day of June, 2016.

                                          /s/ Matthew Cline_____
                                          Matthew Cline

Summit Medical Group, Inc.
d/b/a St. Elizabeth Physicians
c/o Robert M. Hoffer
207 Thomas More Parkway
Crestview Hills, KY 41017